United States District Court
Southern District of Texas
**ENTERED**
September 12, 2024
Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LEISA MCWHORTER, *et al*, | § § | CIVIL ACTION NO 4:22-cv-02256 |
| Plaintiffs, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| SERVICE | § | |
| CORPORATION | § | |
| INTERNATIONAL and | § | |
| SCI SHARED | § | |
| SERVICES LLC, | § | |
| Defendants. | § | |

### OPINION AND ORDER
### ON CLASS CERTIFICATION

This is a class action for breach of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974. See Dkt 26 (amended complaint).

The motion for class certification by Plaintiffs Lakeshier Clark and Anitza Hartshorn is granted in part and denied in part. Dkt 51. As defined and explained below, the motion is granted as to the recordkeeping claim and as to the share class claims regarding the Invesco and Wells Fargo funds. It is denied as to the share class claims regarding the Schwab, Vanguard, and State Street funds.

The share class claims regarding the Schwab, Vanguard, and State Street funds are also dismissed without prejudice for lack of standing, subject to leave allowed to Plaintiffs to attempt repleading as to those funds, if desired and able as explained below.

Subject to that, the following class is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who were participants in or beneficiaries of the SCI 401(k) Plan at any time between July 7, 2016, and the present.

The counsel and law firms of McKay Law LLC, Wenzel Fenton Cabassa, PA, and the Law Office of Chris R. Miltenberger are appointed as counsel for the class.

## 1.   Background

The remaining named Plaintiffs in this class action are Lakeshier Clark and Anitza Hartshorn. They are current (as to Hartshorn) and former (as to Clark) participants in a defined contribution 401(k) Plan administered by Defendants Service Corporation International and SCI Shared Resources, LLC, who are their former employers. Dkt 26 at ¶¶8, 17, 38–39; see also Dkt 52-2 at 540–41 (Clark deposition), 580 (Hartshorn deposition). Service Corporation is the Plan sponsor. Dkt 26 at ¶39. SCI Shared Resources is the Plan administrator. Id at ¶38.

### a.   The claims under ERISA

Plaintiffs filed this lawsuit alleging breach of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974. Dkt 26 at 1. This involves two claims. *The share class claim* alleges that Defendants imprudently included high-cost share classes in the Plan's investment menu when identical low-cost share classes were available. *The recordkeeping fees claim* alleges that the Plan paid excessive compensation to the company that provided recordkeeping and administrative services to the Plan. Dkt 51 at 8–10.

The share class claim is simply stated. It stems from Defendants' offering mutual funds in the form of "retail" share classes on the Plan investment menu. Plaintiffs allege that the retail share classes carried improperly high fees. Dkt 26 at ¶122–23. They assert that Defendants breached their fiduciary duty by failing to prudently monitor the Plan to determine whether, for each fund, it was invested in the lowest-cost share class available for

that fund and by waiting too long to remove the high-cost share classes from the fund. Id at ¶¶125, 130.

The share class allegations pertain to five funds, being (i) Wells Fargo Stable Value Fund C, (ii) Schwab Government Money Investor Shares, (iii) Vanguard Total Intl Stock Index Admiral, (iv) Invesco Diversified Dividend R6 Fund, and (v) State Street U.S. Bond Index Non-Lending Series Fund Class C. Id at ¶134. But in this regard, Plaintiffs acknowledge that at least one of the five funds—the State Street fund—was never actually offered as an investment option. Dkt 52-2 at 534. Defendants assert that the Schwab fund wasn't offered either. Dkt 52 at 10.

The recordkeeping fees claim is more involved. It stems from Defendants' hiring of Charles Schwab Bank to hold the Plan assets and maintain participant accounts. Dkt 26 at ¶¶46, 92. Schwab Retirement Plan Services, Inc, has been the recordkeeper for the Plan since July 1, 2014—the entirety of the proposed class period. Id at ¶¶45, 91. The complaint doesn't differentiate which allegations apply to which Schwab entity. But it is alleged that, in exchange for a fee, the Schwab entities provided a package of services to the Plan, including recordkeeping and information management, trust-related work, transaction processing, participant communications, and consulting services. Id at ¶85. They also charged fees related to additional *a la carte* services. Id at ¶86.

The fee for recordkeeping services was $47 annually per participant from September 30, 2014, to July 1, 2017, when it was reduced to $45 per participant. Dkt 52-2 at 216, 246. In 2020, Defendants sought proposals from other recordkeepers, which led the Schwab entities to agree to lower their fee from $45 to $39 on July 1, 2020. Dkts 26 at ¶95 & 52-2 at 283, 285. They lowered the fee again to $32 per participant on April 1, 2023. Dkt 52-1 at ¶4.

In addition to the direct compensation derived from such fees, Plaintiffs assert that the Schwab entities were paid indirect compensation. One manner of such indirect compensation was revenue sharing, which tied payments

to the Schwab entities to the value of assets in the fund. Dkt 26 at ¶101. Another such manner of indirect compensation was an undisclosed amount by way of an agreement between Defendants and the Schwab entities that any money Plan participants deposited or withdrew from individual accounts would pass through a Schwab clearing account. The Schwab entities were then allowed to retain all interest earned from the clearing account. Id at ¶120. Plaintiffs allege that the Plan allowed the Schwab entities to receive this compensation "without even knowing the amount of compensation Charles Schwab collects" from this agreement. Ibid.

According to Plaintiffs' estimate, the total disclosed direct and indirect compensation for recordkeeping altogether amounted to $100 to $150 annually per participant. Dkt 26 at ¶¶87, 105. These amounts were charged to all Plan participants, regardless of the funds into which they invested. Id at ¶¶36, 106. As such, the recordkeeping claim isn't limited to any particular funds.

Altogether, as to the recordkeeping fees, Plaintiffs allege that Defendants breached their fiduciary duty by failing to control the direct and indirect compensation paid to the Schwab entities for recordkeeping services, which was far greater than reasonable and cost the Plan millions of dollars. Id at ¶¶107–09.

> b.   Allegations as to named Plaintiffs

No personal details are pleaded as to either named Plaintiff, apart from minimal work-related information.

Hartshorn began contributing to the Plan in April 2015. Dkt 52-2 at 416. As of the filing of the live complaint in September 2022, she had invested more than $15,000 in the Plan. Dkt 26 at ¶32. She invested in three Plan funds in total, none of which are challenged in the share class claim. Ibid (specifying T. Rowe Price Retirement 2055 Target Date Fund, NT S&P Index Fund DC–NL Tier 3, and T. Rowe Price Structured Research Tr-G Fund); see also Dkt 52-2 at 534–35 (deposition testimony confirming no investment in five challenged funds). Hartshorn is alleged

to have paid approximately $100 to $150 annually in recordkeeping charges. Dkt 26 at ¶31. Hartshorn ended her employment at SCI in February 2022. Dkt 52-2 at 580. As of November 2023, she still had money invested in the Plan. Dkt 52 at 12.

Clark began contributing to the Plan in December 2019. Dkt 52-2 at 541. Defendants' records show that she invested in only two of the five challenged funds, being the Invesco and Wells Fargo funds. Dkt 52-2 at 350–51. Clark is alleged to have paid approximately $100 to $150 annually in recordkeeping charges. Dkt 26 at ¶35. She left SCI and withdrew from the Plan in July 2021. Dkt 52-2 at 374, 541.

c.   Procedural history

This original complaint in this matter was filed in July 2022 on behalf of Clark and Hartshorn, along with two other named Plaintiffs, Leisa McWhorter and Pichard Alford. It asserted only the recordkeeping fees claim. Dkt 1. Defendants moved to dismiss, arguing that Plaintiffs lacked standing to pursue their claim and, in the alternative, that Plaintiffs failed to state a claim for breach of fiduciary duty under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt 15.

Plaintiffs amended their complaint in September 2022 to add more details related to recordkeeping fees paid to the Schwab entities and to add the share class claim. Dkt 26. Defendants answered without renewing their motion to dismiss. See Dkt 32. It was later stipulated without explanation that McWhorter and Alford were dismissed from the lawsuit with prejudice. Dkts 42 & 44.

The amended complaint seeks both prospective and retrospective relief. Dkt 26 at 38–39. This includes declaratory judgment that Defendants breached their fiduciary duties and are liable to the Plan, removal of fiduciaries and order to enjoin them from future ERISA violations, surcharge against Defendants for all amounts involved in improper transactions, and reformation of the Plan to impose reasonable recordkeeping fees. Ibid.

Pending is the motion by Clark and Hartshorn to certify the following class:

> All persons who were participants in or beneficiaries of the SCI 401(k) Plan at any time between July 7, 2016, and the present.

Dkt 51 at 6. Defendants argue that the class shouldn't be certified because (i) Clark and Hartshorn lack standing as named Plaintiffs, and (ii) the Rule 23 requirements aren't satisfied. Dkt 52 at 13–15, 21–22.

2. Standing

The United States Constitution vests power in the federal courts to adjudicate only "Cases" and "Controversies." US CONST art III, § 2. The burden is squarely upon the party asserting a claim in federal court to establish Article III standing by showing that (i) he or she has suffered an injury in fact, (ii) the injury is fairly traceable to the challenged conduct, and (iii) the injury is likely to be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992); *Spokeo Inc v Robins*, 578 US 330, 338 (2016), citing *FW/PBS, Inc v Dallas*, 493 US 215, 231 (1990). This means that the plaintiff must clearly allege facts at the pleading stage that demonstrate each criterion. *Spokeo*, 578 US at 338, quoting *Warth v Seldin*, 422 US 490, 518 (1975).

The Fifth Circuit holds that standing "is an inherent prerequisite to the class certification inquiry." *Bertulli v Independent Association of Continental Pilots*, 242 F3d 290, 294 (5th Cir 2001). The Supreme Court is likewise clear that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v Casey*, 518 US 343, 357 (1996) (internal quotations omitted). And further, class action plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v Ramirez*, 594 US 413, 431 (2021).

"There is no ERISA exception to Article III." *Thole v U.S. Bank N.A.*, 590 US 538, 547 (2021). Plaintiffs must have both a cause of action under ERISA and constitutional standing. But to be clear, Defendants don't dispute that Clark and Hartshorn have statutory standing because they are authorized to sue on behalf of the Plan under 29 USC §1132(a)(2). Defendants instead challenge aspects of the constitutional standing of Clark and Hartshorn, as named Plaintiffs, to pursue the share class claim, the recordkeeping claim, and the claims for prospective injunctive relief.

### a.   The share class claim

It's not disputed that Clark has standing to bring claims regarding the Invesco and Wells Fargo funds. See Dkt 52 at 14. This isn't surprising, since she invested in them. See *Antoine v Marsh & McLennan Companies, Inc*, 2023 WL 6386005, *6–7 (SDNY) (finding standing in similar ERISA class action for claims regarding funds in which named plaintiffs invested); *Patterson v Morgan Stanley*, 2019 WL 4934834, *4–5 (SDNY) (same). The dispute is instead (i) whether Clark has standing to bring claims regarding the Schwab, Vanguard, and State Street funds in which she never invested, and (ii) whether Hartshorn entirely lacks standing for having never invested in any of the five challenged funds. See Dkt 52 at 13–14.

As recently noted by Judge Brantley Starr, "The Fifth Circuit has yet to answer the question of whether participants in a well-defined contribution plan have standing to challenge funds in which they did not invest." *Perkins v United Surgical Partners International Inc*, 2023 WL 2899539, *3 (ND Tex). And there is conflicting authority on the question among district courts.

A more permissive approach suggests that plaintiffs categorically have standing to challenge funds they didn't invest in based on the derivative nature of ERISA suits. For example, in *Beach v JPMorgan Chase Bank*, the Southern District of New York certified the class over objection that plaintiffs lacked standing to challenge funds

in which they didn't invest. 2019 WL 2428631, *4–5. The court noted that "plan participants bringing derivative claims need not show individual harm to establish standing." Ibid. That is because, under the ERISA statute, claims cannot be made for individual relief but instead are brought in a representative capacity on behalf of the Plan. Id at *4; see also 29 USC §1132(a)(2) (stating that "civil action may be brought . . . by a participant [or] beneficiary . . . for appropriate relief" under ERISA provision imposing liability for breach of fiduciary duty). And so, the court reasoned, injury to the Plan suffices for injury to the plaintiffs for standing purposes. Id at *4, citing *Long Island Head Start Child Development Services, Inc v Economic Opportunity Commission of Nassau County, Inc*, 710 F3d 57, 65 (2d Cir 2013) (finding standing for derivative claims alleging injury to defined-benefit plan). Another court in the Southern District of New York similarly held, "Here, plaintiffs have sued in a representative capacity. . . . The fact that only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts does not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred." *Leber v Citigroup 401(k) Plan Investment Commission*, 323 FRD 145, 156 (SDNY 2017).

Other courts reject this permissive approach and hold that the derivative nature of ERISA lawsuits doesn't stand in for the constitutional standing requirement that individual plaintiffs must show that they have a concrete, particularized injury. For example, see *Perkins v United Surgical Partners International, Inc*, 2022 WL 824839, *3 (ND Tex); *Marshall v Northrop Grumman Corp*, 2017 WL 2930839, *8 (CD Cal). And so, these courts hold that, to establish injury sufficient for Article III standing, plaintiffs generally must show that they invested in the challenged funds. See *Perkins*, 2023 WL 2899539 at *4; *Locascio v Fluor Corp*, 2023 WL 320000, *3 (ND Tex). Beyond this, if plaintiffs haven't invested in the challenged funds, they can establish standing only by showing that they in some way suffered a specific injury to their own account

resulting from the inclusion of the challenged fund in the plan. For example, see *Wilcox v Georgetown University*, 2019 WL 132281, \*8 (DDC), citing *LaRue v DeWolff, Boberg & Associates, Inc,* 552 US 248, 256 (2008).

District courts in the Fifth Circuit tend to follow this latter approach and require a showing of injury not just to the plan but to individual plaintiffs themselves. For example, see *Perkins*, 2022 WL 824839 at \*4 (finding plaintiffs to lack standing to assert claims identical to share class claims here because they failed "to allege injury to their own investment accounts or their investment in [ ] any of the challenged funds"); cf *Harmon v Shell Oil Co*, 2023 WL 5758889, \*5 (SD Tex) (finding plaintiffs had standing without investing in challenged fund because plan administrators' decision to keep that fund in place forced even those who didn't invest in it to incur additional fees). A number of courts in other circuits are in accord. For example, see *In re LinkedIn ERISA Litigation*, 2021 WL 5331448, \*4 (ND Cal) (collecting cases and noting "district courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in," while noting that plaintiffs may have standing if they allege plan-wide mismanagement that caused injury to their own plan account); *Santiago v University of Miami*¸ 2021 WL 1173164, \*6–8 (SD Fla) (mere assertion that plaintiffs were harmed by plan's offering of underperforming funds in which they didn't invest insufficient to establish standing); *Lange v Infinity Healthcare Physicians, S.C.*, 2021 WL 3022117, \*3 (WD Wis) (allegation of mismanagement of funds insufficient to establish standing where plaintiff failed to explain impact on her as to selection of imprudent options in which she didn't invest).

Requiring investment by the named plaintiffs in the challenged funds accords with both Fifth Circuit and Supreme Court precedent. For example, in an ERISA case raising a different challenge under a defined-contribution plan, the Fifth Circuit held, "A plaintiff must demonstrate

standing for himself or herself, not just for others he or she professes to represent." *Ortiz v American Airlines*, 5 F4th 622, 628 (5th Cir 2021), citing *Hollingsworth v Perry*, 570 US 693, 708 (2013); see also *Chavez v Plan Benefit Services, Inc*, 108 F4th 297, 312–14 (5th Cir 2024) (finding standing to sue on behalf of ERISA class where both named plaintiffs had invested in challenged trusts). And as noted at the outset above, the Supreme Court states as a general proposition, "There is no ERISA exception to Article III." *Thole*, 590 US at 547. *Thole* addressed defined-*benefit* plans (rather than a defined-*contribution* plan, as here), but its reasoning holds true. Consistent with Article III, it determined that "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact . . . ." Ibid (quotation omitted). And it traced this through to other contexts requiring plaintiffs filing suit on others' behalf to show an "independent" injury and "concrete stake" in the controversy. Ibid, citing *Gollust v Mendell*, 501 US 115, 125–26 (1991) (shareholders suing on behalf of corporation), and *Craig v Boren*, 429 US 190, 194–95 (1976) (vendor suing on behalf of customers).

Under this approach, it's clear that Clark and Hartshorn lack standing to bring challenges as to funds in which they didn't invest. The subject Plan is a defined-contribution plan, meaning that "each participant has discretion to direct his or her plan contributions to one or more investment options in a lineup chosen by the plan's fiduciaries. Each participant's account value fluctuates with changes in the value of the investment chosen by the participant." *Perkins*, 2022 WL 824839 at *1. Since neither Clark nor Hartshorn chose to invest in the Schwab, Vanguard, and State Street funds, any poor performance or unreasonable expenses in those funds wouldn't impair the value of the accounts in which they did invest. See *In re Omnicom ERISA Litigation*, 2021 WL 3292487, *9 (SDNY) (finding no standing for plaintiffs to challenge funds in which they didn't invest where plaintiffs had control over how to direct their contributions). Indeed, because they chose *not* to invest in the Schwab, Vanguard, and State

Street funds, it would be possible for the Plan to simultaneously *lose* value in those funds while their own accounts *gained* value. See *Taveras v UBS AG*, 612 F Appx 27, 29–30 (2d Cir 2015) (finding plaintiffs hadn't established injury in fact as to funds in which they didn't invest because they directed their own investment choices); *Wilcox*¸ 2019 WL 132281 at *8 (same).

Beyond this, the only injury that Clark and Hartshorn allege to have resulted from Defendants' retention of retail share classes for the five challenged funds is that it "materially decreased the value of the Plan and, in turn, Plaintiffs' . . . retirement savings." Dkt 26 at ¶148. Such mere and conclusory assertion of injury to their own accounts is insufficient, given that the structure of the Plan itself indicates that they couldn't suffer individual injury with respect to funds in which they didn't invest. See *Perkins*, 2022 WL 824839 at *4 (finding conclusory allegation that defendants' actions "cost the Plan and its participants millions of dollars" insufficient to establish standing where plaintiffs alleged no other "specific allegations" as to how they "sustained an individualized and particular injury"). Thus, nothing suggests that either Clark or Hartshorn has the requisite "concrete stake" in the claims challenging the Schwab, Vanguard, and State Street funds. *Thole*, 590 US at 543.

In sum, as to the share class claim, only Clark has standing, and then only with respect to the two funds in which she invested—the Invesco and Wells Fargo funds. As to the Schwab, Vanguard, and State Street funds in which neither Clark nor Hartshorn invested, they fail to show that they suffered the requisite injury-in-fact necessary for constitutional standing as to challenges to the Plan's inclusion of those funds. As such, the class won't be certified as to claims with respect to the Schwab, Vanguard, and State Street funds. And further, since standing is lacking, claims with respect to those funds will be dismissed without prejudice.

b. The recordkeeping fees claim

Clark and Hartshorn allege that they each paid recordkeeping fees and that all Plan participants were charged recordkeeping fees regardless of how they directed their investments. See Dkt 26 at ¶¶30, 106.

Defendants don't appear to dispute that this is sufficient pleading of standing to pursue the recordkeeping fee claims. See Dkt 52 at 14. And there is a broad consensus that standing does exist for plaintiffs to pursue these types of claims when they paid recordkeeping fees or such fees were charged to all plan participants, regardless of the specific investments by participants. For example, see *Harmon*, 2023 WL 5758889 at *4; *Seidner v Kimberly-Clark Corp*, 2023 WL 2728714 at *2 (ND Tex); *Boley v Universal Health Services, Inc*, 36 F4th 124, 131 (3d Cir 2022); *In re Sutter Health ERISA Litigation*, 2023 WL 1868865, *6 (ED Cal); *In re LinkedIn ERISA Litigation*, 2021 WL 533144865 at *4; *Cassell v Vanderbilt University*, 2018 WL 5264640, *3 (MD Tenn).

In short, Clark and Hartshorn have sufficiently pleaded their standing to pursue the recordkeeping fees claim.

c. Prospective equitable relief

Only one named plaintiff must have standing to pursue prospective relief as to each particular claim. See *Harmon*, 2023 WL 5758889 at *5 (collecting cases). But such standing depends on a current, live interest in the prospective relief being sought. As stated by the Ninth Circuit in *DeFazio v Hollister Employee Share Ownership Trust*, "The Plan Participants, who have already cashed out of the Plan, lack Article III standing as to redressability vis-a-vis their claims for prospective equitable relief." 612 F Appx 439, 441 (9th Cir 2015); see also *Trauernicht v Genworth Financial Inc*, 2023 WL 5961651, *6 (ED Va) (finding former plan participants lacked standing to bring claims for prospective relief); *Peters v Aetna, Inc*, 2023 WL 3829407, *7 (WD NC) (same).

Defendants acknowledge that Hartshorn is still invested in the Plan and implicitly concede that she has standing to pursue claims for prospective equitable relief as to the recordkeeping fees claim. Dkt 52 at 12, 15. But they argue that Clark doesn't have standing to pursue any such relief because she's no longer invested in the Plan at all. Ibid. While not explicitly stated, the argument presumably is that she doesn't have standing to pursue prospective equitable relief as to the Invesco and Wells Fargo funds, into which she *previously* invested but into which Hartshorn entirely lacks standing because she *never* invested. See id at 15.

This suggestion of limitations on standing to pursue such prospective relief is correct. As to the recordkeeping fees claim, standing thus exists to pursue prospective equitable relief as a class because Hartshorn has standing and is a current Plan participant. But as to the share class claim, standing doesn't exist to pursue any prospective relief because neither Clark nor Hartshorn can show that such relief would redress any continuing injury that either has suffered.

### d. Standing as to unnamed class members

Having determined that Clark and Hartshorn have standing to assert these claims on their own behalf, the question remains whether they have standing to sue on behalf of the unnamed class members. The Fifth Circuit recently noted a circuit split on how courts resolve disjuncture between the individual harms suffered by named plaintiffs and the class-wide relief they seek. *Chavez*, 108 F4th 297, 307–08 (5th Cir 2024), citing 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §2:6 (6th ed). The analysis may proceed by one of two methods: (i) *the class-certification approach*, under which courts first determine whether named plaintiffs have standing to pursue their own claims, then approach any disjuncture between injury to named plaintiffs and unnamed class members as an issue of class certification under Rule 23; and (ii) *the standing approach*, under which courts approach the disjuncture as part of the

initial standing inquiry. Id at 307–09. The Fifth Circuit has thus far declined to adopt one approach over the other. Id at 312.

The parties here don't join issue as to which approach should be used to assess any disjuncture between injury to Clark and Hartshorn (as named Plaintiffs) and the class-wide relief they are seeking. So, to the extent such disjuncture is asserted in the briefing, it will be addressed under the *class-certification approach* in the Rule 23 analysis below. As the Fifth Circuit noted in *Chavez*, this is the prominent approach used by district courts in most circuits, including this one. Id at 308 n 1. Resolution of issues should also be based on the arguments presented by the parties. *Bean v Great Lakes Insurance SE*, 2024 WL 1332008, *2 (SD Tex) (referring to principle of party presentation). And the class-certification approach aligns more closely to the briefing of the parties on standing. See Dkts 52 at 13–15, 20–21 (response brief, separating analysis of standing of Clark and Hartshorn to pursue claims from Rule 23 analysis of potential distinctions between their injury and that to class members) & 53 at 8 (reply).

### 3.   Rule 23 requirements

It is determined above that (i) Clark has standing to pursue a class action regarding the share class claim as to the Invesco and Wells Fargo funds, (ii) Clark and Hartshorn both have standing regarding the recordkeeping fees claim, and (iii) standing to bring claims for prospective relief exists only as to the recordkeeping fees claim. Addressed next is whether Clark and Hartshorn have demonstrated compliance with the requirements necessary to pursue these claims on a class-wide basis.

Class actions proceed under Rule 23 of the Federal Rules of Civil Procedure. "The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Comcast Corp v Behrend*, 569 US 27, 33 (2013) (quotation marks and citation omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively

demonstrate his compliance with Rule 23." Ibid; see also *Madison v Chalmette Refining LLC*, 637 F3d 551, 554 (5th Cir 2011).

Rule 23(a) lists four prerequisites to class certification—*numerosity*, *commonality*, *typicality*, and *adequacy of representation*. Meeting these requirements isn't alone sufficient. Rule 23(b) instead specifies three class types and the requirements for each. Clark and Hartshorn seek to proceed under (b)(1), by which a class may be certified where inconsistent adjudications with respect to individual class members would establish incompatible standards of conduct for the defendant or would be dispositive of the interests of the other members not parties to the individual adjudications.

The reviewing court must "rigorously consider" the Rule 23(a) prerequisites and the requirements specific to the class type under Rule 23(b). *Chavez v Plan Benefit Services, Inc*, 957 F3d 542, 546 (5th Cir 2020). This requires a court to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." *Flecha v Medicredit, Inc*, 946 F3d 762, 766 (5th Cir 2020) (quotation marks and citation omitted). A court must also consider how any trial on the merits would be conducted if the class was certified. *Prantil v Arkema Inc*, 986 F3d 570, 574 (5th Cir 2021).

### a. Rule 23(a)

Plaintiffs assert that this action satisfies all elements of Rule 23(a). Dkt 51 at 11–16. Defendants only challenge aspects pertaining to *typicality* under (a)(3) and *adequacy* under (a)(4). See Dkt 52 at 15–19. Even with such concessions, the Fifth Circuit holds that Rule 23 nonetheless "requires the court to 'find,' not merely assume, the facts favoring class certification." *Unger v Amedisys Inc*, 401 F3d 316, 321 (5th Cir 2005). Each requirement is thus addressed in turn.

### i. Numerosity

*Numerosity* requires that the plaintiff show that "the class is so numerous that joinder of all members is

impracticable." FRCP 23(a)(1). In addition to the sheer number of purported class members, a court may consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v Jones*, 836 F3d 516, 528 (5th Cir 2016), citing *Zeidman v J Ray McDermott & Co*, 651 F2d 1030, 1038 (5th Cir 1981).

Plaintiffs claim that there are more than 23,000 individual Plan participants who will be class members. Dkt 51 at 17. Joinder of all members is plainly impracticable.

Numerosity is satisfied.

ii.   Commonality

*Commonality* requires that the plaintiff show that "there are questions of law or fact common to the class." FRCP 23(a)(2). As stated by the Supreme Court in *Wal-Mart Stores, Inc v Dukes*, the class members must have a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 US 338, 350 (2011); see also *Ahmad v Old Republic National Title Insurance Co*, 690 F3d 698, 702 (5th Cir 2012). A common instance of the defendant's injurious conduct can establish commonality "even if the amount of damages differs for each injured class member." *Prause v TechnipFMC, PLC*, 2020 WL 3549686, *3 (SD Tex), citing *In re Deepwater Horizon*, 739 F3d 790, 810 (5th Cir 2014).

The Third Circuit observes that the nature of claims for breach of fiduciary duty under ERISA suggests that "commonality is quite likely to be satisfied." *In re Schering Plough Corp ERISA Litigation,* 589 F3d 585, 599 n 11 (3d Cir 2009). That's so here. Questions of law and fact common to all class members include whether Defendants breached their fiduciary duties by failing to offer low-cost share classes in lieu of high-cost share classes and whether Defendants breached their fiduciary duties by paying

16

excessive fees to recordkeeping service providers. Common evidence will answer these common questions.

Commonality is satisfied.

iii.   Typicality

*Typicality* requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). This inquiry "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v Treasure Chest Casino LLC,* 186 F3d 620, 625 (5th Cir 1999) (quotation marks and citation omitted).

The Fifth Circuit holds, "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v Exxon Corp,* 280 F3d 554, 562 (5th Cir 2002) (quotation omitted); see also *In re Cobalt International Energy, Inc Securities Litigation,* 2017 WL 2608243, *2 (SD Tex).

Defendants argue that typicality isn't met here because the characteristics of the funds available and fees charged to the Plan varied throughout the class period. Dkt 52 at 15–17. For example, as to the share class claim, they note that Plaintiffs "challenge multiple different funds that were in the Plan at different times." See id at 16. And as to the recordkeeping fees claim, they note that "the putative members were subject to four different recordkeeping fees during the putative class period." Ibid (emphasis and citation omitted). Defendants also submit evidence that they requested a proposal from the Schwab entities in 2020 that resulted in lower recordkeeping fees, with recordkeeping fees charged to participant accounts declining throughout the proposed class period. See id at 7–9 (noting that recordkeeping fee started at $47 per participant from September 30, 2014, until July 1, 2017,

then declined to $45 per participant, further declined to $39 per participant on July 1, 2020, and last declined to $32 per participant on April 1, 2023) (record citations omitted)). Defendants argue that "the different and declining recordkeeping fees result in the putative class members having different claims." Id at 16.

Defendants' argument as to typicality does suggest some complexity on any ultimate calculation of Plan losses and potential amounts that they must make good to the Plan. But to be clear, Plaintiffs do *not* seek individualized damages for the claims of particular class members. The amended complaint instead requests relief in the form of "Plan losses," amounts Defendants must "make good to the Plan," and "[s]urcharge against Defendants and in favor of the Plan." Dkt 26 at 38. Any award would thus be of a surcharge in favor of the Plan itself, which would be allocated thereafter by Defendants according to their ongoing fiduciary duties. See Dkt 51 at 8 (explaining that "recovery to an individual participant's individual account derives from his or her allocation of the Plan's recovery").

Regardless, this argument that varying fund performance and fees throughout the class period destroys typicality has been squarely rejected by at least one district court, which noted under similar circumstances that the plaintiffs were still seeking redress for "similar grievances under the same legal and remedial theories." See *Krueger v Ameriprise Financial, Inc*, 304 FRD 559, 573 (D Minn 2014) (certifying class). And while it doesn't appear that any other court has directly addressed Defendants' same typicality argument, a host of courts have certified classes with claims similar to the share class and recordkeeping fee claims here. See *Clark v Duke University*, 2018 WL 1801946, *5–6 (MD NC) (certifying recordkeeping fee claim and share class claim); *Huang v TriNet HR III, Inc*, 2022 WL 13631836 (MD Fla) (same); *Cunningham v Cornell University*, 2019 WL 275827, *7, *9 (SDNY) (same); *Garthwait v Eversource Energy Co*, 2022 WL 1657469, *11–12 (D Conn) (same); *Moreno v Deutsche Bank Americas Holding Corp*, 2017 WL 3868803, *1–2, *11 (SDNY) (same);

18

*Coppel v SeaWorld Parks & Entertainment, Inc*, 2024 WL 3086701, *9, *21–22 (SD Cal) (same); *Wildman v American Century Services, LLC*, 2017 WL 6045487, *4–5, *7 (WD Mo) (same); *Harmon*, 2023 WL 5758889 at *7–8 (certifying recordkeeping fee claim); *Munro v University of Southern California*, 2019 WL 7842551, *4–6 (CD Cal) (same); *Cassell,*, 2018 WL 5264640, *5 (MD Tenn) (same); *Henderson v Emory University*, 2018 WL 6332343, *3, *6 (ND Georgia) (same); *Ramos v Banner Health*, 325 FRD 382, 389–90, 398–399 (D Colo 2018) (same); *Sacerdote v New York University*, 2018 WL 840364, *3, *8 (SDNY) (same); *Vellali v Yale University*, 333 FRD 10, 17–18 (D Conn 2019) (same); *Kanawi v Bechtel Corp*, 254 FRD 102, 110, 112 (ND Cal 2008) (same); *Pizarro v Home Depot, Inc*, 2020 WL 6939810, *10, *29 (ND Ga) (same); *Rodriguez v Hy-Vee, Inc*, 2023 WL 4358705, *1–3 (SD Iowa) (same); *Tracey v MIT*, 2018 WL 5114167, *4–5, *7 (D Mass) (same); *Sweda v University of Pennsylvania*, 2021 WL 2665722, *3, *5, *8 (ED Pa) (same); *Sweet v Advance Auto Stores Co*, 2023 WL 3959779, *4–5 (WD Va) (same); *Iannone v AutoZone, Inc*, 2022 WL 5432740, *11–12, *14 (WD Tenn) (same), report and recommendation adopted, 2022 WL 17485953.

Defendants cite two cases to support their typicality contention. See Dkt 52 at 15–16. Both are inapposite. In the first, *Beach v JPMorgan Chase Bank, National Association*, the court addressed similar recordkeeping fee and share class claims with respect to a defined-contribution plan. 2019 WL 2428631, *1–2 (SDNY). The fee structure of the plan changed throughout the pertinent class period. This resulted in plaintiffs paying different recordkeeping fees at different times, including certain fees that plaintiffs conceded weren't excessive or unreasonable. Id at *7. The court found that this difference in record-keeping fees over time affected the typicality analysis because the "common thread" linking the class representatives with the proposed class members was "investment in funds with allegedly excessive fees." Ibid (quotation marks and citation omitted). And participants

19

who invested in the funds when the fees were *not* excessive didn't share that same thread. Id at *7. As such, the court certified the class, while narrowing it to exclude those participants who invested in the challenged funds only when the funds had no fees or concededly reasonable fees. Ibid.

There's of course a big difference here. In *Beach*, the plaintiffs pleaded a benchmark fee below which they conceded recordkeeping fees were reasonable. Id at *8. To the contrary, Clark and Hartshorn don't allege that the subject fees were at *any* time reasonable, even with fees periodically reducing throughout the class period. See Dkts 52 at 16 & 53 at 8. As such, all members of the putative class share the common allegation that they each invested in funds with allegedly excessive fees. See Dkt 26 at ¶28. And this means in turn that Clark and Hartshorn share the same claim with all putative plaintiffs, being that they paid excessive fees.

In the other citation, *Bell v Pension Commission of ATH Holding Co, LLC*, the court addressed similar recordkeeping fee claims. 2018 WL 4385025, *4 (SD Ind). The plan there switched in 2013 from paying its recordkeeper through revenue sharing to paying through a flat fee of $42 per participant, which was charged only to participants with an account balance over $1,000. *Beach,* 2018 WL 4385025 at *1. Plaintiffs sought to certify a class that included the fee structures both pre- and post-2013. Id at *2, *4. The court found that the claims weren't typical. Id at *5. But what it took issue with was the fact that there were different *structures* of recordkeeping fees at different times in the class period—not simply that different *fees* were charged at different times. Ibid. For example, participants with higher account balances actually benefitted from the change to a flat fee in 2013. Id at *4. And participants whose accounts held less than $1,000 didn't pay a fee at all after the change. Ibid. The court declined to certify the recordkeeping fee claim due to this "inclusion of two different fee structures, in the proposed class," which meant that "some members paid less than the

proposed market rate under the revenue sharing agreement, while some members [paid] less under the current flat fee." Id at *5.

But unlike *Bell*, there's no structural difference in the recordkeeping fees assessed throughout the class period here that would make the claims of Clark and Hartshorn atypical of the rest of the putative class. Instead, they are challenging the fact that, throughout the entire class period, the Plan uniformly charged excessive flat fees to all participants, while also having an improper revenue-sharing agreement with its recordkeeper. See Dkt 26 at ¶121. Again, it's true that the recordkeeping fees decreased throughout the class period. But Clark and Hartshorn don't allege that any participants in the proposed class benefited to the extent that the fees they paid were reasonable. Indeed, they don't concede that the fees were reasonable at *any* time in the class period. Their claims instead involve the common thread that they paid excessive fees, thus making them typical even under the approach taken in *Bell*.

A further look at the claims pursued by Clark and Hartshorn confirms that they are typical of the class. All arise from the same course of conduct—their participation in and Defendants' alleged mismanagement of the Plan. This means that proof of Defendants' alleged misconduct—offering imprudent retail share classes and charging excessive fees—will not depend on individual circum-stances of putative class members. See *Henderson*, 2018 WL 6332343 at *6. And indeed, other courts find that such claims "all arise from the same events and course of conduct." *Munro*, 2019 WL 7842551 at *4–6 (finding typicality satisfied for recordkeeping fee claim and imprudent investment options claim because conduct of defendants "were directed to and affected the Plans as a whole"); see also *Vellali*, 333 FRD at 17 (finding claims to arise from same events and course of conduct with respect to "failures to monitor and control the Plan's recordkeeping fees and to monitor the Plan's investment options on an

ongoing basis and remove imprudent ones") (internal quotations and record citation omitted).

The claims of Clark and Hartshorn also involve the same legal arguments relative to the putative class members—that Defendants mismanaged the Plan in violation of ERISA. The legal questions as to each of the claims will be typical across the class.

*As to the share class claim,* was the offering of the Invesco and Wells Fargo funds prudent? The answer to that question will be the same for any class member who invested in either of those challenged funds. See *Cassell*, 2018 WL 5264640 at *5 (recordkeeping fee and offering of imprudent investment options claims, finding typicality satisfied because named plaintiffs' claims were "based upon the same legal theories concerning alleged breaches of fiduciary duties"). The only factual difference will be which class members invested in those funds, which question will be ascertained at a later stage to determine the amount of Plan losses, if necessary. See *Clark*, 2018 WL 1801946 at *5 (recordkeeping fee and share class claims, finding that "potential for some individual issues that would, at best, reduce any damages award does not defeat commonality and typicality under Rule 23(a)"); *Moreno*, 2017 WL 3868803 at *5 (recordkeeping fee and share class claims, finding that "differing purchase dates among class members do not defeat class certification and instead go to the issue of damages") (internal citation omitted).

*As to the recordkeeping fees claim,* was each recordkeeping fee charged reasonable? The answer to that question will also be the same for any member of the putative class who invested in the Plan at that time. The only factual difference will be when each participant invested, and that question will be ascertained at the later stage determining the amount of Plan losses. See *Boley,* 36 F4th at 134 (excessive fees claim, holding that some participants may have paid higher fees "relate[s] to degree of injury and level of recovery").

In sum, the claims pursued by Clark and Hartshorn share the same essential characteristics with members of

the putative class and are based on the same course of conduct and same legal theory. Typicality is thus satisfied.

iv.   Adequacy of representation

*Adequacy of representation* requires the plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This explores a number of overlapping aspects— "the zeal and competence" of lead counsel, the "willingness and ability" of the class representative to "take an active role in and control the litigation and to protect the interests of absentees," and the "risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v Progressive Securities Insurance Co*, 856 F3d 408, 412 (5th Cir 2017) (cleaned up).

A lesser line of attack by Defendants is that Clark and Hartshorn are inadequate class representatives because the potential for intra-class conflict exists. Dkt 52 at 20. Defendants contend that "class members have different claims because they were subject to different recordkeeping fees during the relevant time period. Likewise, only a subset of the Plan participants invested in the alleged improper share class funds." Ibid. This is simply a variation on the argument addressed above as to typicality. Variation among recordkeeping fees during the class period and limited investment in the challenged funds are issues that go to recompensable losses, but the substantive legal claims stay the same. Rather than alleging individual claims among putative plaintiffs that do or could conflict with each other, Clark and Hartshorn seek relief on behalf of the Plan for all allegedly excessive recordkeeping fees and each challenged fund. See Dkts 51 at 21 (noting that they "are pursuing claims on behalf of the Plan and not individual claims") & 53 at 7–8 (noting relief sought on behalf of Plan, being "ERISA's statutorily available remedies"); see also Dkt 26 at 38–39 (requesting relief only as to Plan).

The main line of attack by Defendants is that Clark and Hartshorn are inadequate class representatives because they assertedly lack the knowledge necessary to

take an active role in the case. They point, for instance, to the inability of Clark and Hartshorn to answer specific questions about the case at deposition. See Dkt 52 at 17–18. For example, neither was able to state what a share class is. Id at 17. Clark didn't personally know whether a $45 recordkeeping fee was excessive. Id at 18. And Hartshorn was unable to state what a recordkeeping fee is and didn't know what services the Schwab entities provided in exchange for the recordkeeping fee. Ibid.

Countering this argument are other designations submitted from their depositions to establish that Clark and Hartshorn each understand the general legal theory of their claims and their obligations in pursuing them. For example, Clark stated that "if what I was invested in was mismanaged and . . . fees are taken from me that should not have been taken from me or my fellow cohorts, then I think that . . . everything should be made right." Dkt 52-2 at 554. She also knew specifically that she was charged a recordkeeping fee of $45. Id at 558. And while Hartshorn didn't know the specific recordkeeping fee that she was charged, she believed that "it was more than it should have been" and was "too high"—especially when compared to her current employer's plan, which charged a recordkeeping fee of $20 to $25 per year. Id at 583, 585. Also submitted with the motion for class certification are declarations from each stating that she "understand[s] [her] responsibility to represent all class members" and "agree[s] to honor" the duties of a class representative. Dkt 51-1 at 284 (Clark declaration), 289 (Hartshorn declaration). Each also states that she cares about the lawsuit, reviews documents sent by her attorneys, and monitors the progress of the lawsuit. Ibid. And both express an understanding that each is pursuing the lawsuit "to recover the Plan's losses caused by imprudent investments on the Plan investment menu and excessive compensation paid to the Plan's service providers." Ibid.

Defendants' approach presupposes that the pertinent question is whether financially unsophisticated representatives such as Clark and Hartshorn could answer hostile

questions as posed by financially sophisticated counsel. That isn't the standard. To the contrary, at a general level, the Supreme Court holds that it's improper to dismiss a class action because the named plaintiff in a complex financial investment case is unable to comprehend the legal relationships and transactions described in the complaint. *Surowitz v Hilton Hotels Corp,* 383 US 363, 370–74 (1966). Instead, named plaintiffs in such cases may rely on the advice and explanation of attorneys. Id at 372–73. To hold otherwise would be to "prevent unsophisticated litigants from ever having their day in court." Id at 373.

Now, it's to some extent true, as Defendants argue, that the Fifth Circuit still requires careful inquiry into the adequacy analysis under Rule 23(a), and that *Surowitz* isn't some rubber-stamp exercise that washes away the issue. In *Berger v Compaq Computer Corp*, for instance, the Fifth Circuit observed that it "has never read *Surowitz* so broadly as to support the proposition that a class representative who does not understand any of the legal relationships or comprehend any of the business transactions described in the complaint nonetheless may be 'adequate' for purposes of class certification." 257 F3d 475, 482 (5th Cir 2001). On the one hand, the representatives' "understanding should not be limited to derivative knowledge acquired solely from counsel." Id at 483 n 18, citing *Kelley v Mid-America Racing Stables, Inc*, 139 FRD 405, 409–11 (WD Okla 1990). But on the other, it simply "must appear that the representative[s] will vigorously prosecute the interests of the class through qualified counsel." *Berger*, 257 F3d at 482, quoting *Gonzales v Cassidy*, 474 F2d 67, 72 (5th Cir 1973). It's a matter of degree, bearing in mind the entirety of the record as to adequacy. At the end of the day, in line with the holding of *Surowitz*, class representatives "need not be legal scholars and are entitled to rely on counsel," but they "need to know more than that they were 'involved in a bad business deal.'" *Berger*, 257 F3d at 483, citing *Kelley*, 139 FRD at 410.

Clark and Hartshorn meet the adequacy standard as delineated in *Berger*. Taken together, their declarations and the whole of their testimony suggest that each will vigorously prosecute her claims, and that they have at least some knowledge beyond derivative knowledge acquired through counsel. To the extent that there may be (unsurprising) gaps in detailed knowledge about what funds should have been offered, or what proper fees should have been, Clark and Hartshorn are without question entitled to rely on the advice and explanation of counsel. *Surowitz,* 383 US at 373; *Berger*, 257 F2d at 483.

Defendants cite various cases in this circuit where district courts have found named plaintiffs inadequate because they lack knowledge about basic facts of the case. See Dkt 52 at 18–19. Each is factually distinct from the record at hand.

- In *Walker v Alta Colleges, Inc,* adequacy wasn't established where the named plaintiff stated that he didn't speak with his lawyers frequently and couldn't recall (among other things) the type of relief he was seeking, where the case had been filed, or who were named as defendants. 2010 WL 11200636, *4 (WD Tex). To the contrary here, Clark and Hartshorn appear to be in regular communication with their lawyers and are aware of details about this case. See Dkts 52-2 at 580 & 51-1 at 283–84, 288–89.

- In *Mistetsky v Bilek,* adequacy wasn't established where the named plaintiff didn't read case documents, revealed that her attorneys were her sole source of information, admitted to "lazy" behavior, and failed to understand "even the simplest details" of the case. 2010 WL 11583151, *6–9 (SD Tex). But here, Clark and Hartshorn have submitted declarations swearing that they review documents, monitor the progress of the lawsuit, and commit to "participate in the vigorous prosecution of this lawsuit on behalf of the class." Dkt 51-1 at 284, 289.

- o In *Byes v Telecheck Recovery Services, Inc,* adequacy wasn't met where the named plaintiff was unaware of her duties as proposed class representative—and had submitted a false affidavit. 173 FRD 421, 427–28 (ED La 1997). As already noted, Clark and Hartshorn are aware of their duties as class representatives and have submitted credible declarations (in addition to their deposition testimony). Dkt 51-1 at 283–85, 288–90.

- o In *Ogden v AmeriCredit Corp,* adequacy wasn't met where the named plaintiffs' sole basis for suit was that "something unfortunate happened to her 401(k) plan" and "bad things occurred," with one plaintiff failing to appear at a hearing where she was to testify. 225 FRD 529, 533–36 (ND Tex 2005). Here, Clark and Hartshorn are aware of at least some facts to support their assertions against Defendants, have a basic understanding about the nature of their suit, and are actively involved in the pursuit of their claims. See Dkt 52-2 at 554, 558, 583, 585 & 51-1 at 283–84, 288–89.

In sum, Clark and Hartshorn have demonstrated more than the limited knowledge of named plaintiffs in those cases and don't share the same credibility problems. But the bigger picture is also important to keep in mind. Were Defendants' position correct, then no (or very few) ERISA class actions would ever go forward for lack of adequate class representatives, as participants in such plans don't need to be experts in ERISA requirements to participate. Plan administrators would thus largely be insulated from liability simply for want of an adequate plaintiff, leaving plan participants who aren't lawyers or investment experts unable to redress their injuries. Instead, examples abound of other courts finding named plaintiffs with somewhat unsophisticated knowledge of their cases still to be adequate class representatives in cases alleging similar recordkeeping fee and share class claims.

For example, the Middle District of North Carolina observed, "The complex nature of ERISA fiduciary breach claims often requires investors to rely on their attorneys and hired experts and such reliance does not make the plaintiffs inadequate representatives." *Clark*, 2018 WL 1801946 at *9 (finding adequacy established as to recordkeeping fee and share class claims), citing *Surowitz*, 383 US at 372–73. The Southern District of New York stated, "It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about [their ERISA] claims." *Moreno*, 2017 WL 3868803 at *7 (finding adequacy established as to recordkeeping fee and share class claim). And the Northern District of Georgia noted, "ERISA itself represents a highly dense regulation, and claims arising from it are equally complex. That a plaintiff might not fully understand the facts and legal theories of this complex ERISA action is understandable." *Henderson*, 2018 WL 6332343 at *7 (finding adequacy established as to recordkeeping fee claim). See also *Beach*, 2019 WL 2428631 at *8 (finding adequacy established as to recordkeeping fees and share class claims); *Iannone*, 2022 WL 5432740 at *12–13 (same); *Garthwait*, 2022 WL 1657469 at *12–13 (same); *Ramos*, 325 FRD at 394–96 (finding adequacy established as to recordkeeping fees claim); *Sacerdote*, 2018 WL 840364 at *4–5 (same); *Vellali*, 333 FRD at 17–18 (same); *Kanawi*, 254 FRD at 110–11 (same); *Pizarro*, 2020 WL 6939810 at *10–11 (same); *Cassell*, 2018 WL 5264640 at *5 (same).

The interests of Clark and Hartshorn are aligned with those of the other putative class members, as all seek relief for losses to the Plan arising from allegations that Defendants maintained imprudent share classes in certain funds and charged excessive recordkeeping fees. They have also demonstrated a sufficient level of knowledge and understanding of these claims and the litigation. Adequacy is thus satisfied.

v.   Summary

In sum, the class is numerous, questions of law and fact are common to the proposed class, the claims of Clark and Hartshorn are typical of the claims of the putative class, and they can adequately protect the interests of the putative class in a representative capacity. All prerequisites of Rule 23(a) are thus satisfied.

b.   Rule 23(b)(1)

Plaintiffs seek to certify the class under Rule 23(b)(1), which allows a class action satisfying Rule 23(a) requirements to be maintained if "prosecuting separate actions by or against individual class members would create a risk of" either of the following:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

A respected treatise on class actions states that the "derivative nature of ERISA [breach of fiduciary duty] claims" makes them "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." William B. Rubenstein, 2 *Newberg and Rubenstein on Class Actions* § 4:21 (West 6th ed 2023) (internal quotations and citation omitted); see also *Kanawi*, 254 FRD at 111: "Most ERISA class action cases are certified under Rule 23(b)(1)."

Certification under Rule 23(b)(1)(A) or (B) is thus frequently found to be appropriate for claims like those asserted here under ERISA. See *Harmon*, 2023 WL 5758889 at *8–9 (certifying recordkeeping fees claim under

Rule 23(b)(1)(A)); *Munro*, 2019 WL 7842551 at *10 (certifying recordkeeping fees claim under Rule 23(b)(1)(A) or, alternatively, (B)); *Henderson*, 2018 WL 6332343 at *9–10 (same); *Ramos*, 325 FRD at 397 (same); *Sacerdote*, 2018 WL 840364 at *6 (same); *Vellali*, 333 FRD at 18 (same); *Pizarro*, 2020 WL 6939810 at *12–15 (same); *Rodriguez*, 2023 WL 4358705 at *2–3 (same); *Sweda*, 2021 WL 2665722 at *4–5 (same); *Iannone*, 2022 WL 5432740 at *13–14 (same); *Clark*, 2018 WL 1801946 at *9–10 (certifying recordkeeping fees claim and share class claim under Rule 23(b)(1)(A) or, alternatively, (B)); *Huang*, 2022 WL 13631836 at *10 (same); *Cunningham*, 2019 WL 275827 at *7–8 (same); *Garthwait*, 2022 WL 1657469 at *15 (same); *Coppel*, 2024 WL 3086701 at *19–21; *Wildman*, 2017 WL 6045487 at *5–6 (same).

Clark and Hartshorn initially sought certification under (b)(1)(A), with passing, alternate request under (b)(1)(B). Dkt 51 at 21–22. But they ultimately limited their request to only the former. See Dkt 53 at 9 (reply). Defendants argue that the class shouldn't be certified as such because the Fifth Circuit has held that certification under (b)(1)(A) is inappropriate "when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs." Dkt 52 at 21, citing *Casa Orlando Apartments, Ltd v Federal National Mortgage Association*, 624 F3d 185, 197 (5th Cir 2010); see also *Chavez*, 108 F4th 297, 314–16 (declining to certify ERISA class under Rule 23(b)(1)).

That concern isn't present here. To the extent that Clark and Hartshorn seek monetary relief, it's sought only as to the Plan. Specifically, the relief sought includes declaration that Defendants breached their fiduciary duties, removal of fiduciaries, surcharge against Defendants and in favor of the Plan for all amounts involved in any improper transactions, reformation of the Plan to pay only reasonable recordkeeping expenses, and attorney fees. Dkt 26 at 38–39. As such, in adjudicating this action, no award of varying levels of money damages

will be made to different class members. As noted above, any award will be of a surcharge in favor of the Plan itself, which will then be allocated to individual accounts by Defendants according to their ongoing fiduciary duties. See Dkt 51 at 8.

This again places emphasis on the fact that Clark and Hartshorn seek Plan-wide relief. Because this is so, allowing various, individual participants to pursue separate actions could result in conflicting standards for Defendants in operating the Plan, which would no doubt prove untenable in practice. Indeed, the Fifth Circuit, when noting in *Langbecker v Electronic Data Systems Corp* that certification of ERISA class action under 23(b)(1) is likely appropriate for injunctive and plan-wide monetary relief, observed, "A judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay." 476 F3d 299, 318 (5th Cir 2007); see also *Harmon*, 2023 WL 5758889 at *8 (certifying recordkeeping fee claim under 23(b)(1)(A) because of risk of inconsistent judgments across individual cases that would result in "conflicting and incompatible standards of conduct" for plan administrator) (internal quotations and record citation omitted).

Certification under Rule 23(b)(1)(A) is appropriate.

4. Appointment of class counsel

Clark and Hartshorn are to this point represented by McKay Law LLC, Wenzel Fenton Cabassa, PA, and the Law Office of Chris R. Miltenberger. They request appointment of their counsel as class counsel. Dkt 51 at 22–23. Defendants make no objection. See Dkt 52.

Under Rule 23(g)(1)(A), the court should consider counsel's work investigating claims, experience, knowledge, and resources. Nothing in the record suggests that the proposed counsel fail to meet these standards for appointment as class counsel.

The requested counsel will be appointed.

31

5.   Conclusion

The proposed class action, as limited by the above rulings, satisfies the Rule 23(a) requirements, and prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant Plan administrators. Certification of this class under Rule 23(b)(1)(A) is thus appropriate.

The motion to certify class is GRANTED IN PART and DENIED IN PART. Dkt 51.

It is GRANTED as to the recordkeeping claim, as to the share class claims regarding the Invesco and Wells Fargo funds, and as to prospective equitable relief with respect to the recordkeeping claim.

It is DENIED as to the share class claims regarding the Schwab, Vanguard, and State Street funds and as to the Invesco and Wells Fargo funds with respect to prospective equitable relief.

The share class claims regarding the Schwab, Vanguard, and State Street funds, and the claims for prospective equitable relief regarding the Wells and Invesco funds, are DISMISSED WITHOUT PREJUDICE for lack of standing. Plaintiffs may seek leave to file an amended complaint to cure the deficiencies noted above, if desired and believed possible without the need for joinder of parties or further discovery. Any such leave must be sought within twenty-one days of entry of this Opinion and Order.

The Court FINDS that Plaintiffs Lakeshier Clark and Anitza Hartshorn have established each of the necessary requirements of Rule 23(a) and (b)(1)(A) of the Federal Rules of Civil Procedure as to the remaining claims.

The following class is thus CERTIFIED pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who were participants in or beneficiaries of the SCI 401(k) Plan at any time between July 7, 2016, and the present.

McKay Law LLC, Wenzel Fenton Cabassa, PA, and the Law Office of Chris R. Miltenberger are APPOINTED as counsel for the class.

SO ORDERED.

Signed on September 11, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge