# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LEISA MCWHORTER, ANITZA HARTSHORN, PICHARD ALFORD, and LAKESHIER CLARK, on behalf of the SCI 401(k) Plan, themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCI SHARED RESOURCES, LLC, AND SERVICE CORPORATION INTERNATIONAL,<br><br>Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 4:22-cv-02256 |

## <u>DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO STRIKE AND EXCLUDE PLAINTIFFS' EXPERT MICHAEL DICENSO</u>

Dated: October 30, 2025

Respectfully submitted,

*/s/ Reagan Brown*

Reagan M. Brown
State Bar No.  03162200
Federal ID No.
reagan.brown@nortonrosefulbright.com

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
M. Carter Crow
State Bar No.  05156500
carter.crow@nortonrosefulbright.com
Kate Ergenbright
State Bar No.  24097660
kate.ergenbright@nortonrosefulbright.com
Carolyn Webb
State Bar No.  24106558
carolyn.webb@nortonrosefulbright.com

1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:   (713) 651-5151
Facsimile:   (713) 651-5246

*Attorney-in-Charge for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT & AUTHORITIES ............................................................................... 1

I.     Plaintiffs are Not Immune From Daubert Challenges In a Bench Trial................. 1

II.    Plaintiffs Fail to Meet Their Burden To Establish DiCenso's Recordkeeping Compensation Opinion Is Reliable ................................................................................... 1

    A.    DiCenso Failed to Use an Accepted Methodology ....................................... 2

    B.    DiCenso's Flawed Methodology Cannot Be Saved by Relying on Undisclosed or Unreliable Data ................................................................................ 4

        a.    DiCenso's Opinions Relying on Undisclosed Data Sources Should be Struck. ....................................................................................................... 4

        b.    DiCenso's Opinions Relying on Unreliable Data Sources Should be ....... 5 Excluded ........................................................................................................... 5

    C.    DiCenso's Recordkeeping Fee Opinion Should be Viewed With Skepticism 6

III.    Plaintiffs Claim DiCenso Offers No Legal Opinions But His Report Evidences Otherwise ......................................................................................................................... 7

IV.    DiCenso Should Be Precluded From Opining On Float .................................... 8

CONCLUSION ......................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
   No. 06-0701, Doc. 225 (S.D. Ill. Mar. 31, 2009)........................................................................3

*Brown v. Illinois Cent. R. Co.*,
   705 F.3d 531 (5th Cir. 2013) .........................................................................................................6

*Cates v. Trustees of Columbia Univ. in City of New York*,
   No. 1:16-CV-06524 (GBD) (SDA), 2019 WL 8955333, at *11 (S.D.N.Y. Oct.
   25, 2019), *report and recommendation adopted*, No. 16CIV6524GBDSDA,
   2020 WL 1528124 (S.D.N.Y. Mar. 30, 2020) ..............................................................................3

*McDonald v. Lab. Corp. of Am. Holding*s,
   No. 1:22CV680, 2025 WL 951590 (M.D.N.C. Mar. 28, 2025) ...............................................3, 4

*Nairne v. Landry*,
   151 F.4th 666 (5th Cir. 2025) ........................................................................................................1

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) .........................................................................................................3

**Rules and Statutes**

Administrative Procedures Act, 5 U.S.C. §§ 1801 *et seq*..................................................................8

Fed. R. Civ. P. 37.............................................................................................................................5

Fed. R. Civ. P. 702.....................................................................................................................1, 4, 6

**INTRODUCTION**

It is Plaintiffs' burden to establish DiCenso's testimony satisfies Rule 702's reliability requirement. Instead of meeting this burden, Plaintiffs spend substantial time rebutting arguments Defendants do not actually make and relying on lawyer say-so to try and demonstrate DiCenso's $30 acceptable fee opinion is grounded in a reliable and accepted methodology (it is not) and that DiCenso's reliance on unreliable and undisclosed data sources should be swept under the rug (it should not).

Plaintiffs have similarly failed to meet their burden to establish the admissibility of DiCenso's opinions that implicate questions of law.

**ARGUMENT & AUTHORITIES**

**I.    Plaintiffs are Not Immune From Daubert Challenges In a Bench Trial**

Plaintiffs repeatedly imply *Daubert* and Rule 702 do not apply in cases that will be tried to the bench. *See* Opp. at 1, 8-9. This is incorrect. Indeed, the Fifth Circuit recently affirmed the prohibition of expert testimony prior to a bench trial on legal issues where "evidentiary safeguards are generally more relaxed." *Nairne v. Landry*, 151 F.4th 666, 693 (5th Cir. 2025). Defendants' Motion cites a number of ERISA cases in which courts in the Fifth Circuit have excluded expert testimony under Rule 702. Mot. at 14. Despite Plaintiffs' implications to the contrary, *Daubert* and Rule 702 apply.

**II.   Plaintiffs Fail to Meet Their Burden To Establish DiCenso's Recordkeeping Compensation Opinion Is Reliable**

Plaintiffs fail to meet their burden to establish DiCenso's opinion calculating Plan losses is reliable because Plaintiffs fail to demonstrate DiCenso (1) uses an accepted methodology; (2) uses reliable data sources; and (3) his suggested $30 "acceptable"

- 1 -

recordkeeping fee is identical to the fee proposed by Minnich and in Plaintiffs' First Amended Complaint.

A.   **DiCenso Failed to Use an Accepted Methodology** Plaintiffs do not dispute DiCenso's excessive recordkeeping calculation must be grounded in a sound and reliable methodology, but Plaintiffs say-so is insufficient to satisfy *Daubert*.

For Plaintiffs to establish DiCenso's excessive recordkeeping calculation is grounded in a sound and reliable methodology, Plaintiffs must clearly identify his methodology. Yet Plaintiffs only provide the following vague explanation: "he identified the recordkeeping services provided, compared them against competitive benchmarks, and calculated the difference between what the Plan actually paid and what a prudent fiduciary would have paid." Opp. at 12. It remains unclear how DiCenso actually *calculated* alleged plan losses, as DiCenso has provided no information about his calculations nor has he identified what specific benchmarks he used.

Further, while Plaintiffs claim "similar expert opinions . . . have routinely been found admissible by other courts," a review of the case law Plaintiffs cite provides no support for the reliability of the vague methodology Plaintiffs claim DiCenso used. Opp. at 12-13. In several instances, these cases only serve to highlight DiCenoso's lack of methodology, as the expert testimony admitted involved a survey of comparator plans and analysis of charted fees. For instance, in *Vellali*, the expert "identified fourteen specific plans" that he used as comparator plans "to plot an exponential curve . . . [to] show[] his reasonable fee opinion is supported by actual examples of market pricing . . . ." No. 3:16-

CV-1345(AWT), 2022 WL 968555, at *3 (D. Conn. Mar. 30, 2022).  DiCenso has not identified a single comparator plan, let alone anywhere close to fourteen, despite also testifying that he would need "more than ten" comparator plans to do a "proper comparison" of the Plan's recordkeeping fee.  Mot. at Ex. E., at 164:18-169:7, 177:23-179:11.  Nor could DiCenso identify documents to support his opinion that $30 was the proper recordkeeping fee.  *Id.* at 165:3-167:25.

The other case law Plaintiffs rely on is similarly inapplicable.  For instance, in *Cates* the court specifically held it "need not decide the question of admissibility" at the summary judgment stage because it did not consider the challenged expert opinions in denying summary judgment.  *Cates v. Trustees of Columbia Univ. in City of New York*, No. 1:16-CV-06524 (GBD) (SDA), 2019 WL 8955333, at *11 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, No. 16CIV6524GBDSDA, 2020 WL 1528124 (S.D.N.Y. Mar. 30, 2020).  Similarly, the *Abbot* court did not address whether the recordkeeping expert used an accepted methodology but focused instead on challenges to the expert's data sources.  *See Abbott v. Lockheed Martin Corp.*, No. 06-0701, Doc. 225 at 3-4 (S.D. Ill. Mar. 31, 2009).

*Tussey* includes no discussion or explanation of the expert's challenged methodology; thus, it is entirely unclear how Plaintiffs believe this opinion establishes the specific opinions DiCenso offers here are grounded in a sound and reliable methodology.  *See Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir. 2014).  Finally, the *McDonald* court excluded a recordkeeping fee expert as unreliable because his opinion was "not supported by any scientific methodology, nor supported by appropriate validation, and therefore is

- 3 -

not reliable." *McDonald v. Lab. Corp. of Am. Holdings*, No. 1:22CV680, 2025 WL 951590, at \*4 (M.D.N.C. Mar. 28, 2025). The fact that the *McDonald* court (or any other court) admitted Minnich's testimony does not make DiCenso's testimony admissible here.

At bottom, Plaintiffs have cited no case or industry resource that establishes DiCenso's opinion is grounded in an accepted scientific or logical methodology sufficient to meet Rule 702's reliability requirement. As such, it should be excluded.

**B.    DiCenso's Flawed Methodology Cannot Be Saved by Relying on Undisclosed or Unreliable Data**

Plaintiffs try to save DiCenso's flawed methodology by referencing data sources he claims to have relied on that were either (1) not disclosed to Defendants or (2) indisputably unreliable.

a.    *DiCenso's Opinions Relying on Undisclosed Data Sources Should be Struck.*

The below chart identifies the data sources DiCenso claims to have relied on—the vast majority of which were never disclosed:

| Data Source | Disclosure to Defendants |
|---|---|
| "Past RFPs" | No |
| "Past Pricing" | No |
| Research from investment consulting firm NEPC | No |
| Plan Sponsor Council of America Reports | No |
| "401(K) book of averages" | No |
| 408(b)(2) Disclosures | Certain SRPS 408(b)(2) Disclosures related to the Plan are cited in the Report |
| Form 5500 Forms | Certain Plan related Form 5500 Forms are cited in the Report |

- 4 -

| "Benchmarking Reports" | No |
|---|---|
| "Peer-reviewed literature" | No |
| Past testimony from other matters | No |

*See* Opp. at 13; Mot. at 4-5.

At his deposition, DiCenso testified that he relied on Plan Sponsor Counsel of America reports and other "benchmarking reports," but he cannot recall which of these documents he reviewed (Mot. at Ex. E. 168:1-10); he did not maintain a file of the documents that he reviewed, testifying that he "would have to find the documents" (*id.* at 166:1-10); and his analysis for determining the $30 figure did not involve identifying any specific comparator companies ("they weren't specific companies") (*id.* at 167:7-13). Rather, he relied on "reports and data" that he cannot identify and he "can't remember the names of the companies they related to." *Id.* at 167:10-25. Defendants have had no opportunity to review, let alone cross-examine DiCenso about these undisclosed and unspecified data sources at his deposition. It is not up to Defendants or this Court to sift through the record or independently search for the sources DiCenso relies on. Because Plaintiffs have failed to satisfy their *Daubert* burden, DiCenso's $30 per-participant recordkeeping opinion should be struck under Rule 37.

> b.    *DiCenso's Opinions Relying on Unreliable Data Sources Should be Excluded*

Plaintiffs do not dispute that to establish DiCenso's excessive recordkeeping compensation calculation is reliable, Plaintiffs have to establish he used reliable data sources. The only two sources DiCenso actually disclosed (certain 408(b)(2) Disclosures and Form 5550s) are indisputably unreliable.

Indeed, DiCenso admitted Form 5500s are "unreliable." *Id.* at 165:5-7. Plaintiffs try to explain this testimony away by noting that this was just one of "several reference points." Opp. at 15-16. But nothing in Plaintiffs' Opposition changes the fact that DiCenso admits he used unreliable data.

Plaintiffs similarly attempt to side step the fact that the Schwab 408(b)(2) Disclosures for the Plan include only estimated fees by arguing that the disclosures "are the Plan's own documents" and are "legally required." Opp. at 16-17. First, as established in the uncontroverted affidavit of an SRPS representative, the 408(b) Disclosures are prepared by SRPS, not the Plan. Mot. at Ex. B § 15. But neither argument changes the disclosures' content and it is uncontroverted that the 408(b)(2) Disclosures only provide information on estimated (not actual) fees, rendering these disclosures unreliable. *See* Mot. at 2-3, 12.

After disregarding all undisclosed or unreliable data sources DiCenso relies on, only DiCenso's industry knowledge and expertise remain, which is not enough to satisfy Rule 702's reliability requirement. As the Fifth Circuit has "long held that [w]ithout more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible." *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013) (internal quotation marks omitted).

## C. DiCenso's Recordkeeping Fee Opinion Should be Viewed With Skepticism

Plaintiffs conclusively assert that the fact that DiCenso, Minnich, and the First Amended Complaint each include a $30 "Acceptable" recordkeeping fee confirms the "$30

- 6 -

figure rests on a tested and trustworthy method." Opp. at 19. But that does not excuse the fatal methodology and data issues outlined herein and in Defendants' Motion, and the "consistency" of these sources should be viewed with extreme skepticism.

## III.    Plaintiffs Claim DiCenso Offers No Legal Opinions But His Report Evidences Otherwise

Plaintiffs do not dispute that DiCenso is unqualified to offer legal opinions, and the legal opinions Defendants' challenge in the Motion should be per se excluded.

Plaintiffs claim that DiCenso is not offering legal conclusions or "statements of law" but "factual process analysis." *Id.* at 19-20. Plaintiffs' position is entirely divorced from reality. For instance, Plaintiffs claim DiCenso does not intend to opine on "who is a fiduciary." Opp. at 19. Yet, his Report refers to "plan fiduciaries" nearly thirty times and opines that certain Plan consultants are not fiduciaries, and repeatedly refers to a "fiduciary standard of care." *See* generally Mot. at Ex. C. Without citation, Plaintiffs claim DiCenso's references to "a fiduciary standard of care" is the "same terminology plan consultants use to describe prudent governance practices, not to instruct on statutory obligations." Opp. at 20. Even if Plaintiffs are correct about the use of this term, they misunderstand Defendants' point. DiCenso's testimony that various actions do or do not satisfy a "fiduciary standard of care" is an impermissible legal conclusion, distinct from testimony regarding whether such actions are consistent with industry standards. *See* Mot. at 14-16.

Plaintiffs' similarly claim that DiCenso "does not tell the Court what ERISA means," yet his Report purports to do just that, as reflected by the numerous statements

- 7 -

regarding ERISA's alleged requirements noted in the Motion.  Opp. at 19; Mot. at 5-6.  If Plaintiffs do not intend DiCenso to opine on legal issues, then there should be no dispute his testimony should be excluded as outlined in the Motion.  *See* Mot. at 14-17.

### IV.    DiCenso Should Be Precluded From Opining On Float

Plaintiffs miss the mark on Defendants' challenge to DiCenso's float opinion.  Each of the alleged float "process failures" (Opp at 22) DiCenso seeks to opine on are supported by DiCenso's reliance on the Department of Labor's Field Assistance Bulletin 2002-03, which Judge Lake rejected in *Espinoza*.  *See* Mot. at 17.  In other words, DiCenso claims FAB 2002-03 "mandates" fiduciaries take certain steps regarding float.  Opp. at 22.

But as outlined in the Motion, FAB 2002-03 is not a regulation and has never gone through the procedures of the Administrative Procedures Act, 5 U.S.C. §§ 1801 *et seq.*  *Id.*  Thus, it imposes no regulatory requirements on Defendants.  Judge Lake recognized this in excluding an expert's float opinion relying on FAB 2002-03 for this very reason.  *See Espinoza*, 2025 WL 449439, at *7.  Plaintiffs say-so that DiCenso is relying on this bulletin "not as law but as evidence of industry consensus" does not distinguish DiCenso's float opinion from *Espinoza*, which is directly on point, and DiCenso's float opinion should be excluded.

### CONCLUSION

Defendants request that the Court grant their Motion and provide it any and all other relief to which they are entitled.

Dated: October 30, 2025

Respectfully submitted,

/s/ Reagan Brown

Reagan M. Brown
State Bar No.  03162200
Federal ID No.
reagan.brown@nortonrosefulbright.com

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
M. Carter Crow
State Bar No.  05156500
carter.crow@nortonrosefulbright.com
Kate Ergenbright
State Bar No.  24097660
kate.ergenbright@nortonrosefulbright.com
Carolyn Webb
State Bar No.  24106558
carolyn.webb@nortonrosefulbright.com

1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246

*Attorney-in-Charge for Defendants*

## CERTIFICATE OF WORD COUNT

This motion contains 1998  words, excluding the words that need not be counted under Judge Eskridge's Procedure No. 18(c).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure upon all counsel of record via the Court's CM/ECF system on October 30, 2025.

/s/ Kate Ergenbright
Kate Ergenbright

- 9 -