**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ANITZA HARTSHORN, and LAKESHIER CLARK, on behalf of the SCI 401(k) Plan, themselves, and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>SCI SHARED RESOURCES, LLC, and SERVICE CORPORATION INTERNATIONAL,<br><br>    Defendants. | Civil Action No. 4:22-cv-02256<br><br>The Honorable Charles Eskridge |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND FACTS ............................................................................... 2

III.    A.    Description of the Class Action and Procedural History ....................... 2

        B.    Discovery Efforts ................................................................................ 3

        C.    Settlement Discussions ........................................................................ 3

        D.    Proposed Settlement ........................................................................... 3

        E.    Proposed Timetable for Effectuation of the Settlement ........................ 4

IV.     ARGUMENT ................................................................................................ 5

        A.    The Proposed Settlement Merits Preliminary Approval ....................... 5

              1.    Standard of Review ..................................................................... 6

              2.    The Rule 23(e)(2) Factors Favor Preliminary Approval .............. 6

                    a.    Adequacy of Representation ............................................. 7

                    b.    The Settlement is the Result of Good Faith, Arm's -
                          Length Negotiations by Well-Informed and Experienced
                          Counsel ......................................................................... 7

                    c.    Adequacy of Relief ......................................................... 9

              3.    The Remaining Reed Factors Favor Preliminary Approval ........ 12

                    a.    Plaintiffs' Probability of Success on the Merits ............... 12

                    b.    Range of Possible Recoveries ........................................ 12

                    c.    Stage of the Proceedings and Amount of Discovery ........ 14

                    d.    Opinions of Class Counsel and Absent Class Members... 14

        B.    The Notice Plan Should be Approved ................................................ 15

        C.    The Plan of Allocation Should be Approved ...................................... 16

V.      CONCLUSION ........................................................................................... 17

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

## TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ..................................................................................... 12

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) ................................................................................... 21

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
  242 F.3d 290 (5th Cir. 2001) ...................................................................... 15, 19, 22

*Blackmon v. Zachary Holdings, Inc.*,
  20-cv-00988-ESC (W.D. Tex.) ................................................................................... 2

*Boley v. Universal Health Serv.*, Inc.,
  498 F. Supp. 3d 715 (E.D. Pa. 2020) ...................................................................... 19

*Braden v. Wal-Mart Stores*,
  588 F.3d 585 (8th Cir. 2009) ............................................................................. 13, 14

*Cassell v. Vanderbilt Univ.*,
  No. 16-2086 (M.D. Tenn. Oct. 23, 2018) ................................................................ 19

*Carrabba v. Randalls Food Markets*,
  38 F. Supp. 2d 468 (N.D. Tex. 1999) ...................................................................... 11

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448, 455 (2d Cir. 1974) ............................................................................ 13

*Clark v. Duke Univ.*,
  No. 16-1044 (M.D.N.C. Apr. 13, 2018) ................................................. 2, 3, 16, 24

*Coan v. Kaufman,*
  457 F.3d 250 (2d Cir. 2006) ..................................................................................... 13

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................... 9, 14

*DeHoyos v. Allstate Corp., et al.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ...................................................... 6, 7, 9, 12, 14, 15

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) ................................................................................ 17, 24

*Garza v. Sporting Goods Properties, Inc.*,
    1996 WL 56247, at \*12 (W.D. Tex. Feb. 6, 1996) ............................................. 6, 13, 14

*Hays v. Eaton Group Attorneys*, LLC,
    2019 WL 427331 (M.D. La. Feb. 4, 2019)............................................................... 8

*Horton v. Goose Creek Indep. Sch. Dist.*,
    690 F.2d 470 (5th Cir. 1982) .................................................................................. 22

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
    892 F.3d 719 (5th Cir. 2018) .................................................................................. 15

*In re Chesapeake Energy Corp.*,
    2021 WL 2270167 (S.D. Tex. June 3, 2021)............................................................ 6

*In re Chicken Antitrust Litig.*,
    669 F.2d 228 (5th Cir. 1982) .................................................................................. 17

*In re Chinese-Mfd. Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020) ..................................................................... 6

*In re Dynegy, Inc. ERISA Litigation*,
    309 F. Supp. 2d 861 (S.D. Tex. 2004)..................................................................... 12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012)................................................................... 8

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................ 14

*In re Pool Prods. Dist. Market Antitrust Litig.*,
    310 F.R.D. 300 (E.D. La. 2015) ............................................................. 6, 7, 14, 16, 17

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) .............................................................................. 13

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................... 5

iii

*Krueger v. Ameriprise Fin. Inc.*,
    304 F.R.D. 559 (D. Minn. 2014) ........................................................................ 19, 20

*LaRue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008) .................................................................................................. 13

*LifeCare Hospitals v. Health Plus of Louisiana*,
    418 F.3d 436 (5th Cir. 2005) ................................................................................... 11

*Lowrey v. Texas A&M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997) ................................................................................... 13

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ................................................................................... 16

*Mass Mutual Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .................................................................................. 4, 5, 12, 22

*Matson v. NIBCO*,
    2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) ...................................................... 7, 15

*Milofsky v. American Airlines,*
    404 F.3d 338 (5th Cir. 2005) ................................................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .................................................................................................. 16

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir. 1982) ................................................................................. 13

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
    188 F.R.D. 433 (W.D. Tex. 1999) .............................................................................. 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .................................................................................................. 13

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................ 12, 17

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
  960 F.3d 190 (5th Cir. 2020) ................................................................................ 18

*Slipchenko v. Brunel Energy, Inc.*,
  2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ............................................................ 17

*Smith v. Commonspirit Health*,
  37 F.4th 1160 (6th Cir. 2022) .............................................................................. 14

*Sommers Drug Stores v. Corrigan Ent.*,
  793 F.2d 1456 (5th Cir. 1986) .............................................................................. 11

*Stott v. Capital Fin. Servs., Inc.*,
  277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................... 16

*Terraza v. Safeway Inc.*,
  No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) .................................. 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................... 9

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .............................................. 12, 13, 15

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

## I.    INTRODUCTION

The Parties have agreed to a proposed settlement ("Settlement") of this ERISA action for total relief of $2,000,000.00, which will provide a substantial recovery to members of the Settlement Class.[1] In light of the substantial Settlement payment and the risks of continued litigation, Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

Class Counsel have vigorously pursued relief on behalf of the Plan. The Parties agreed to the Settlement after extensive motion practice, completion of fact and expert discovery, certification of a nationwide class, Defendants' summary judgment motion was fully briefed, participation in a full-day mediation with an experienced mediator, and the n months of subsequent arm's-length negotiations between experienced counsel. Resolving the Class Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which otherwise could be used for the resolution of this Class Action, and which could result in a recovery less than provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement are satisfied. Accordingly, Plaintiffs' motion should be granted and notice should be provided to the Settlement Class in accordance with the proposed notice plan ("Notice Plan").[2]

---

[1] The Settlement Agreement and its exhibits are attached as exhibits to the accompanying Declaration of Michael McKay. Terms not defined herein shall have the same meaning as in the Settlement Agreement.

[2] The Notice Plan, which consists of: (1) an individual notice to be e-mailed and/or mailed to Settlement Class members; and (2) the creation of a dedicated website to share information with

1

## II.    BACKGROUND FACTS

### A.    Description of the Class Action and Procedural History

Plaintiffs filed their original Complaint on July 7, 2022. Dkt 1. Plaintiffs filed their First Amended Complaint ("FAC") on September 28, 2022. Dkt 26. Plaintiffs allege that Defendants, each fiduciaries of the Plan, breached their fiduciary duties by: (1) selecting and retaining imprudent investments in the Plan; and (2) causing the Plan to pay unreasonable recordkeeping and administrative fees. *See* FAC, at *1. Defendants answered Plaintiffs' FAC on October 26, 2022. Dkt 32.

The Parties then filed a Joint Discovery / Case Management Plan on January 20, 2023 and discovery began in earnest. Dkt 36. Plaintiffs moved for class certification under Rule 23 of the Federal Rules of Civil Procedure. Dkt 51. Defendants opposed the motion for class certification. Dkt 52. After the motion was fully briefed, the Court heard oral argument. Dkt 55. Thereafter, the Court certified this case as a Rule 23 class action on September 11, 2024. Dkt 56.

Defendants moved for summary judgment on September 29, 2025. Dkt 66. Defendants also moved to exclude both of Plaintiffs' expert witnesses. Dkt 64, 65. Plaintiffs opposed Defendants' motions. Dkt 68-71. Defendants' motion for summary judgment and motions to exclude are pending. The Parties reached a settlement in principle before those motions were decided. The Parties e-mailed the Court on February 23, 2026,

---

Class Members and a toll-free telephone number to which Class Members can direct questions about the Settlement, satisfies the requirements of Rule 23 and due process, and is consistent with notice plans approved by courts and implemented in similar ERISA action class settlements.

informing the Court that they had reached a settlement in principle and were working towards finalizing a formal settlement agreement.

### B.        Discovery Efforts

The Parties engaged in significant discovery efforts, including the exchange of discovery requests and production of thousands of pages of documents related to Plan administration, investments, fiduciaries, advisors, expenses, and Defendants' investment and service provider monitoring processes. *See* McKay Decl., ¶ 7. Plaintiffs retained two expert witnesses. Defendants also retained two expert witnesses. *Id.* ¶ 8.  The Parties exchanged expert witness reports for their respective expert witnesses. *Id.* Plaintiffs took ten depositions of Plan fiduciaries responsible for the day-to-day administration of the Plan. *Id.* Defendants deposed Plaintiffs and both of Plaintiffs' expert witnesses. *Id.* Plaintiffs also subpoenaed and deposed the Plan's recordkeeper, Schwab Retirement Plan Services, Co. *Id.* The Parties completed extensive fact and expert discovery, giving counsel a well-developed record on which to evaluate the claims, defenses, and settlement.

### C.        Settlement Discussions

After completing discovery and after this Court certified this case as a Class Action, the Parties engaged in discussions regarding a potential resolution of the Class Action. The Parties held a mediation on October 27, 2025, with Dennis Clifford, a well-respected Texas-based mediator who is experienced in mediating claims of this type. *Id.* ¶ 10. The Parties exchanged mediation briefs prior to the mediation and additional information during the mediation. *Id.* The Parties were unable to reach an agreement in principle to resolve the Class Action during the mediation. *Id.* However, the Parties continued to

participate in discussions with the mediator and among counsel for nearly four months after the mediation and ultimately reached an agreement in principle on February 23, 2026. *Id.*

## D.  The Proposed Settlement

The Settlement provides that, in exchange for the dismissal of the Class Action and a release of claims, Defendants will make payment in an aggregate amount of $2,000,000.00 into a Qualified Settlement Fund to be allocated to Class members pursuant to the Plan of Allocation. *See* Settlement Agreement, §§ 1.1.24; 4-5. The Settlement Agreement and the proposed Preliminary Approval Order also set forth the Notice Plan and provide for the payment of attorneys' fees and reimbursement of litigation expenses, and for case contribution awards to Plaintiffs, all of which are subject to the Court's approval. *See* Settlement Agreement, §§ 1.1.43; 2.4; 4-6.  In addition, the Settlement Agreement provides for the approval of the Settlement by an Independent Fiduciary. *See* Settlement Agreement, § 2.1.

## E.  Proposed Timetable for Effectuation of the Settlement

The Parties respectfully request that the Court set a Fairness Hearing at which it may determine whether the Settlement is fair, reasonable, and adequate and should receive final approval. Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Proposed Deadline |
|---|---|
| Settlement Administrator to publish settlement website and activate toll-free number and to send Settlement Notice to Class Members | 90 days before Fairness Hearing |

| Event | Proposed Deadline |
|---|---|
| Deadline to file final approval papers and fee request | 45 days before Fairness Hearing |
| Deadline to file Independent Fiduciary report | 45 days before Fairness Hearing |
| Deadline for Class Members to file objections | 30 days before Fairness Hearing |
| Deadline for Class Members to file notice of intention to appear | 15 days before Fairness Hearing |
| Deadline to file notice of compliance with Class Action Fairness Act | 10 days before Fairness Hearing |
| Deadline to respond to objections | 7 days before Fairness Hearing |
| Fairness Hearing | On a date convenient for the Court no sooner than 120 days after the date the motion for entry of the Preliminary Approval Order is filed |

## III.    ARGUMENT

Under Rule 23(e), courts in this Circuit and nationwide generally follow a two-step process in considering the approval of class action settlements. First, courts conduct a preliminary review to determine whether the settlement is "within the range" of possible approval, such that notice should be provided to the proposed settlement class. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662 (N.D. Tex. 2010). If preliminary approval is

granted, courts conduct a final fairness hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2). The purpose of the fairness hearing is to determine whether the proposed settlement is "fair, reasonable, and adequate." *DeHoyos v. Allstate Corp., et al.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).

### A.  The Proposed Settlement Warrants Preliminary Approval

The Fifth Circuit "has admonished courts to be mindful of the 'overriding public interest in favor of settlement' in class action suits." *DeHoyos*, 240 F.R.D. at 287 (citing *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996)). As shown below, the Settlement reflects the kind of informed, arm's-length compromise that courts in this Circuit favor.

### 1.  Standard of Review

Preliminary approval is not a final determination; after preliminary approval and notice, the court "conducts a more thorough and rigorous analysis of the same factors" to determine "the appropriateness of granting final approval." *In re Chesapeake Energy Corp.*, 2021 WL 2270167, at *5 (S.D. Tex. June 3, 2021) (citing *In re Chinese-Mfd. Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 484 (E.D. La. 2020)). Plaintiffs request that the Court take the first step in the approval process and preliminarily approve the Settlement so that notice can be given to the Settlement Class. *See id* at *4.

At the preliminary approval stage, "the standards are not as stringent as those applied to a motion for final approval." *In re Pool Prods. Dist. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). "If the proposed settlement discloses no reason to doubt

6

its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* Settlements reached through arm's-length negotiation are entitled to a judicial presumption of fairness. *See DeHoyos*, 240 F.R.D. at 287.

### 2.    The Rule 23(e)(2) Factors Favor Preliminary Approval

"Before a settlement is approved, the Court must find the proposed settlement is 'fair, reasonable and adequate.'" *DeHoyos*, 240 F.R.D. at 285-86; FED. R. CIV. P. 23(e)(2). This inquiry includes four explicit factors enumerated in Rule 23(e)(2), *i.e.*, (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members, as well as the familiar *Reed* factors.[3] *See id.*; *see also Matson v. NIBCO*, 2021 WL 4895915 at *9 (W.D. Tex. Oct. 20, 2021) (noting "because the Rule 23 and *Reed* factors overlap, this Court will follow the lead of other courts in this circuit and combine these factors . . . .").

#### a.    Adequacy of Representation

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. *Matson*, 2021 WL 4895915 at *9. For the same reasons as explained in the discussion of

---

[3] The *Reed* factors are: (1) the existence of fraud or collusion behind the settlement; (2) the probability of plaintiffs' success on the merits; (3) the range of possible recovery; (4) the complexity, expense and likely duration of the litigation; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *See DeHoyos*, 240 F.R.D. at 286-87.

Rule 23(a)(4), Plaintiffs and Class Counsel satisfy the requirements of Rule 23(e)(2)(A). Plaintiffs' interests are neatly aligned with the Settlement Class because each member suffered injuries as a result of Defendants' alleged Plan-level conduct. Further, Class Counsel has "substantial experience in litigating complex ERISA class actions and are familiar with the factual and legal issues of the case." *See Hays v. Eaton Group Attorneys*, *LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *see also* McKay Decl., at ¶¶ 3, 5-11.

###### b.     The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2)(B), "[a] 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations by experienced counsel after discovery). Here, the Parties conducted significant discovery and the Settlement Agreement was negotiated at arm's-length by adverse parties, each represented by experienced counsel. *See* McKay Decl., ¶¶ 3, 5-11. The Parties also engaged in a formal mediation process in which they communicated their respective positions and conducted independent analyses to support the Settlement. *Id.*, ¶ 10. As demonstrated by rounds of motion practice and adversarial briefing, as well as extensive settlement negotiations, there has been no collusion or complicity of any kind in

connection with the Settlement or related negotiations. *Id.*, ¶¶ 5-11.

"[C]ompromise is the essence of a settlement" and the Court should "rely upon the judgement of experienced counsel for the parties." *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 461 (W.D. Tex. 1999) ("[A] presumption of correctness is said to attach to a class settlement reached in arm['[s][-]length negotiations between experienced, capable counsel after meaningful discovery."). Class Counsel have significant experience in similar litigation, and are well-informed about this Class Action. *See* McKay Decl., ¶¶ 3, 5-11. Accordingly, Class Counsel's judgment about the merits of the Settlement should be given considerable weight.

### c.    Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule 23(e)(2)(C), courts must consider the following: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

The prosecution of this Class Action and the risks that Plaintiffs face in establishing liability and damages as well as maintaining a class through trial overwhelmingly support preliminary approval. Indeed, a trial would be complex given the legal issues relevant to Plaintiffs' allegations, and even if Plaintiffs prevailed, it could be years before any recovery would be received in light of the possibility of appeals. In evaluating the merits of a class action settlement, "it is important to be mindful of the vagaries of litigation and compare

the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *DeHoyos*, 240 F.R.D. at 291 (citation omitted). Moreover, because continued litigation increases litigation expenses, it could result in a smaller recovery ultimately to the Class, even ignoring the time value of money.

Plaintiffs' pursuit of recovery for the Plan's losses resulting from the course of conduct asserted in this Class Action began nearly four years ago. Here, Plaintiffs' and Class Counsel's thorough investigation, coupled with the significant document discovery conducted in this Class Action, has afforded them a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case, which is reflected by, *inter alia*, the rounds of briefing and extensive settlement negotiations. In addition, Class Counsel's reliance upon experts in assessing the claims, defenses and potential losses supports a finding that they had adequate information and evidentiary support for the Settlement.

The record in these proceedings and the law confirm the risks of establishing liability and damages. In order to succeed on the merits, Plaintiffs would need to establish not only that Defendants' investment and recordkeeping processes were deficient, but Defendants would certainly assert affirmative defenses and, undoubtedly, vigorously argue for a judgment in their favor as they did at the summary judgment stage and again at the trial stage. Such defenses would likely include, *inter alia*, arguments based upon the substantive and procedural prudence of Defendants' processes. The argument would certainly feature competing expert testimony, all of which pose risks to Plaintiffs' ability

to establish liability. Moreover, even if Plaintiffs defeat Defendants' summary judgment motion and are successful in establishing liability at trial, there is a substantial risk that the Court could accept Defendants' Plan loss arguments and award far less than the funds secured by the Settlement, or nothing at all.

In addition to the risks of establishing liability and damages, Plaintiffs face a risk of maintaining this Class Action as a class action through trial. Consistent with ERISA, Plaintiffs assert these claims derivatively on the Plan's behalf and as class claims. *See* 29 U.S.C. §§ 1109, 1132(a)(2). While Plaintiffs are confident that this Class Action would satisfy Rule 23 through trial, there is some risk that circumstances or the law could change, and the Court could find a reason to decertify the Class. The Settlement alleviates that risk too.

Here, the Settlement Agreement and Plan of Allocation provide for a notice and claims process designed to ensure relief is effectively accorded to Settlement Class members. Because the Settlement Class is comprised of current and former Plan participants most of the data necessary to administer the Settlement is in the possession of the Plan's Recordkeeper. As explained below, the Plan of Allocation is designed to provide *pro rata* recovery to Settlement Class members tied to the size of their accounts during the Class Period. Class members do not need to make any claims to receive a settlement payment. The payments will be made automatically by depositing payments into Class members' individual participant Plan accounts for those who have active accounts in the Plan or by sending a check to those Class members who no longer have an active account in the Plan.

11

Class Counsel will request no more than 33 1/3% of the Gross Settlement Amount as an award of attorneys' fees. In addition, Class Counsel will seek reimbursement of litigation expenses. This is consistent with awards made by courts in this Circuit under the percentage-of-the recovery method. *See Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) (citing *Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)). Further, consistent with awards by courts nationwide, Class Counsel will request awards of no more than $10,000 each to compensate Plaintiffs for their service. *See, e.g.*, *DeHoyos*, 240 F.R.D. at 340 (collecting cases). This request is reasonable in light of Plaintiffs' willingness to devote their time and energy to this litigation and overall benefits achieved for the Settlement Class. *See id.*

### 3. The Remaining *Reed* Factors Favor Preliminary Approval

Since several *Reed* factors are addressed by Rule 23(e)(2), the discussion that follows will focus on the non-overlapping factors: (i) Plaintiffs' probability of success on the merits; (ii) range of possible recoveries; (iii) stage of proceedings and amount of discovery completed; and (iv) opinions of Class Counsel, Class Representatives, and absent Class Members.

### a. Plaintiffs' Probability of Success on the Merits

"In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287. At the same time, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* (quotations and alterations omitted). In assessing

potential resolutions of this Class Action, Class Counsel took into account Defendants'

defenses, arguments in favor of an alternative methodology for measuring the Plan's losses,

and intention to contest class certification and move for summary judgment. Even if

Plaintiffs were to prevail at trial, and damages awarded were even higher than the

Settlement, there is "no doubt lengthy appeals would follow as would enormous costs and

expenses." *See Garza*, 1996 WL 56247, at *16.

### b.      Range of Possible Recoveries

"In determining whether the settlement is reasonable in light of the range of possible

recovery factor, the Court is to 'determine the value of the settlement in light of the

potential for recovery.'" *Id.* (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 563 (E.D.

La. 1993)). Plaintiffs' experts calculated the Plan's losses as approximately $9.8 million.

*See* McKay Decl., ¶ 8. The $2 million Settlement represents just over 20% of the Plan's

estimated losses. Were the Court to adopt an alternative method for measuring the Plan's

losses, potential recoveries could be smaller. Indeed, Defendants argue the Plan sustained

no losses. *Id.* Of course, this also presupposes a finding of liability on each of Plaintiffs'

claims, which Defendants have vigorously disputed as well.

The Fifth Circuit has recognized "[t]he fact that a proposed settlement may only

amount to a fraction of the potential recovery does not, in and of itself, mean that the

proposed settlement . . . should be disapproved." *Parker v. Anderson,* 667 F.2d 1204, 1210

n.6 (5th Cir. 1982) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.

1974)); *Welsh*, 2018 WL 7283639 ("Indeed, 'a satisfactory settlement . . . could . . . amount

to a hundredth or even a thousandth part of a single percent of the potential recovery.'"

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

(quoting *Grinnell*, 495 F.2d at 455 n.2). The recovery rate here (20%) sits comfortably within the range accepted by courts in this Circuit. *See, e.g.*, *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 434-35 (S.D. Tex. 1999) (collecting cases) (approving settlement where tiers of claimants would receive 3-13% and 32%, respectively, of estimated damages).[4]

### c.    Stage of the Proceedings and Amount of Discovery

In assessing whether the Parties have sufficient information to evaluate the Settlement, "[t]he Court should consider all information which has been available to the parties." *DeHoyos*, 240 F.R.D. at 292 (citation omitted). "The extent of discovery needed in order for the parties to have sufficient information to make an informed and reasoned evaluation of the settlement . . . is left to the discretion of the Court." *Garza*, 1996 WL 56247 at *13 (citing *Cotton*, 559 F.2d at 1332-33). Here, the Parties completed fact and expert witness discovery and they fully briefed summary judgment. This factor strongly supports granting preliminary approval.

### d.    Opinions of Class Counsel and Absent Class Members

When "evaluating the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Welsh*, 2018 WL 7283639, at *14 (quotation omitted). Plaintiffs relied on experienced and qualified counsel and remained informed of developments in the litigation through regular consultation with Class Counsel. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience

---

[4] The "Released Claims" language is also similar to language approved by Courts in the Fifth Circuit. *See In re Pool Prods.*, 310 F.R.D. at 315-16 (collecting cases).

in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292. Here, Class Counsel submit that the Settlement is fair, reasonable, and adequate based on their extensive experience with ERISA class actions, hands-on involvement and knowledge of this litigation, and participation in negotiations through multiple mediation sessions. McKay Decl. ¶ 11, *see also Welsh*, 2018 WL 7283639 at *15. Pursuant to the Notice Plan, Class Members will have the opportunity to be heard regarding the Settlement, and any requests for fees, expenses, and case contribution awards in advance of the Fairness Hearing. Accordingly, this factor also weighs heavily in support of preliminary approval.

### B.      The Proposed Notice Plan Should be Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2); *see also Matson*, 2021 WL 4895915, at *8 (Rule 23 "requires the Court to direct to class members 'the best notice that is practicable under the circumstances.'"). At bottom, in order to satisfy due process considerations, notice to Settlement Class members must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan is designed to reach the largest number of Settlement Class members possible. Indeed, the Settlement Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing. Notably, all Settlement Class members had Plan accounts, so the Plan's

recordkeeper has their addresses and other identifying information. Additionally, the Settlement Notice, Settlement Agreement, and other litigation documents will be posted on a website established by the Settlement Administrator, and the Settlement Administrator will establish and monitor a toll-free number to field inquiries by Settlement Class members. The Settlement Notice will also provide Class Counsel's contact information. Settlement Class members may also contact Class Counsel – and Class Counsel expects to receive thousands of calls from Settlement Class members based on prior similar cases. Each Settlement Class member who telephones Class Counsel will speak with an attorney who is familiar with the facts of the case and qualified to answer all Settlement Class members' questions.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e). It clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing. Courts in this Circuit have approved similar notice plans. *See, e.g.*, *In re Pool Prods.*, 310 F.R.D. at 317. In sum, the Notice Plan is designed to "fairly apprise[]" members of the class "of the terms of the settlement and the options that are open to them, and provide[] them with sufficient information for them to make a rational decision whether they should intervene in the settlement approval procedure." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983)) (quotation marks omitted).

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

## C.    The Plan of Allocation Should be Approved

Approval of a plan of allocation "is governed by the same standard of fairness, reasonableness and adequacy applicable to approval of the settlement as a whole." *Schwartz*, 2005 WL 3148350, at *23 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 238 (5th Cir. 1982)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015) (quotation marks omitted) (collecting cases). Here, the Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class. *See In re Pool Prods.*, 310 F.R.D. at 315. This is substantially similar to plans approved by courts in analogous ERISA litigation. *See, e.g.*, *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period . . . ."). In light of the equitable treatment of Class members, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement, and Notice Plan, and set a date for the final Fairness Hearing.

Respectfully submitted this 17th day of April, 2026.

/s/ *Michael McKay*

Michael McKay, Esq.  (Pro Hac Vice)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mmckay@mckaylaw.us

Chris Miltenberger, Esq. (Bar No.: 14171200)
**THE LAW OFFICE OF CHRIS R. MILTENBERGER**
1360 N. White Chapel, Suite 200
Southlake, Texas, 76092-4322
Telephone: (817) 416-5060
Facsimile: (817) 416-5062
Email: chris@crmlawpractice.com

Brandon J. Hill, Esq. (Pro Hac Vice)
Luis A. Cabassa, Esq. (Pro Hac Vice)
Amanda E. Heystek, Esq. (Pro Hac Vice)
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Ave., Suite 300
Tampa, Florida 33602
Telephone: (813) 337-7992
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

*Class Counsel*

## MEET AND CONFER CERTIFICATION

Consistent with Local Rule 7.1, in the spirit of good faith, before it was filed, Plaintiffs sent Defendants a near final draft of this Motion and Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement. Counsel thereafter conferred on the substance of the motion. Although Defendants do not necessarily agree with or endorse all of the statements made in the motion by Plaintiffs, Defendants do not oppose the motion or preliminary approval of the Settlement. Hence, the motion is unopposed.

/s/ *Michael McKay*
Michael McKay

## WORD COUNT COMPLIANCE CERTIFICATION

This brief contains 4,648 words, excluding the words that need not be counted under Judge Eskridge's Procedure No. 18(c).

/s/ *Michael McKay*
Michael McKay

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system in compliance with the Local Rules.

/s/ *Michael McKay*
Michael McKay